# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

SALIT AUTO SALES, INC. d/b/a SALIT
AUTO SALES on behalf of others similarly
situated,

      Plaintiff ,

                               No. 2:19-cv-18107-JMV-MF

v.

CCC INFORMATION SERVICES, INC.;
LIBERTY MUTUAL GROUP, INC.;
LIBERTY MUTUAL HOME AND AUTO
SERVICES LLC, d/b/a LIBERTY MUTUAL
FIRE INSURANCE COMPANY AND
WAUSAU UNDERWRITERS INSURANCE
COMPANY,

      Defendants.

---

## LIBERTY MUTUAL'S  MOTION TO DISMISS
## <u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

---

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ................................................................................................2

BACKGROUND .................................................................................................4

ARGUMENT .....................................................................................................8

I.      The Court Should Dismiss The Amended Complaint With Prejudice In
        Light Of Salit's Allegation That It Was Not Deceived By Liberty Mutual....8

II.     Wasau Complied With New Jersey Law By Using A CCC Valuation
        Report.................................................................................................11

III.    Salit Has Not Alleged An Injury-In-Fact .......................................................13

IV.     Salit Has Failed To Comply With Rule 9(b) .................................................15

V.      The Court Should Dismiss Salit's CFA Claim For Additional Reasons ......18

        A.      Insurance Coverage Claims Are Not Subject to the CFA..................18

        B.      Plaintiff Has Not Alleged an "Ascertainable Loss"...........................21

        C.      Plaintiff Does Not Qualify as a "Consumer" Within the Meaning
                of the CFA ...........................................................................................23

VI.     The Court Should Dismiss Plaintiff's NJRICO Claim..................................26

        A.      Salit Has Not Alleged a Pattern of Racketeering Activity.................26

        B.      Salit Has Not Alleged an Association-in-Fact Enterprise..................27

VII.    Salit's Civil Conspiracy Claim Fails .............................................................28

VIII.   The Court Should Dismiss Salit's Request For Declaratory And
        Injunctive Relief ............................................................................................29

CONCLUSION ..................................................................................................31

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arc Networks, Inc. v. Gold Phone Card Co.*, 333 N.J. Super. 587, 590
(Law. Div. 2000)......................................................................................18

*Banks v. Wolk*,  918 F.2d 418, 422 (3d Cir. 1990).................................27

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).................8

*Board of Ed. of Cty. of Asbury Park v. Hoek,* 38 N.J. 213, 238 (1962) .................29

*Carroll v. Cellco P'ship*, 313 N.J. Super. 488, 502 (App. Div. 1998) ...................21

*Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006)........................18

*City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) ...........................................29

*Conte Bros. Auto. v. Quaker State-Slick 50, Inc.*, 992 F. Supp. 709, 716
(D.N.J. 1998).............................................................................................24

*Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105, 122–23
(App. Div. 2005) ...............................................................................10, 21, 22

*Dare Investments, LLC v. Chicago Title Ins. Co.*, No. CIV. 10-6088 DRD,
2011 WL 2600594, at *9 (D.N.J. June 29, 2011) ....................................27

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508,
530 (D.N.J. 2011)......................................................................................15

*Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 978 (9th Cir.2011) ......................30

*Falat v. Cty. of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3
(D.N.J. Mar. 19, 2013) ............................................................................16

*Germinaro v. Fid. Nat'l Title Ins. Co.*, 737 F. App'x 96, 101-02 (3d Cir. 2018) ....26

36173868.3

## CASES

*Hundred E. Credit Corp. v. Eric Shuster Corp.*, 212 N.J. Super. 350, 355,
(App. Div. 1986) ....................................................................................................23

*Interlink Prods. Int'l, Inc. v. Cathy Trading, LLC*, No. 16-2153,
2017 WL 931712, at *2-3 (D.N.J. Mar. 9, 2017) ...................................................24

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices &
Liab. Litig.*, 903 F.3d 278, 284 (3d Cir. 2018)......................................................13

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F. Supp. 584, 618
(D.N.J. 1996)..........................................................................................................19

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
678 F.3d 235, 245-46 (3d Cir. 2012) .....................................................................27

*Jaye v. Oak Knoll Vill. Condo. Owners Ass'n, Inc.*, 751 F. App'x 293,
297-98 (3d Cir. 2018)..............................................................................................15

*Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 265 (1997) ..........19, 20

*Lewis v. GEICO*, No. 18-cv-05111, 2019 U.S. Dist. LEXIS 41403
(D.N.J. March 11, 2019) ...................................................................................10, 11

*McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) ...........................30

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
331 F.3d 406, 414–15 (3d Cir. 2003) .....................................................................28

*Myska v. New Jersey Mfrs. Ins. Co.*, 440 N.J. Super. 458, 485
(App. Div. 2015) ................................................................................................19, 20

*Papergraphics Int'l, Inc. v. Correa*, 389 N.J. Super. 8, 12
(App. Div. 2006) ........................................................................................23, 24, 25

## CASES

*Naylor v. Harkins,* 27 N.J.Super. 594 (1953) ..........................................................28

*O'Shea v. Littleton,* 414 U.S. 488, 494 (1974)..........................................................30

*Pharmacy & Healthcare Commc'ns, L.L.C. v. Nat'l Cas.Co.*, No. A-0382-14T3, 2015 WL 10793944, at *4 (N.J. App. Div. May 11, 2016)..............9

*Pierzga v. Ohio Cas. Grp. of Ins. Cos.*, 208 N.J. Super. 40, 47 (App Div. 1986)...19

*Poling v. K. Hovnanian Enterprises*, 99 F. Supp. 2d 502, 508 (D.N.J. 2000) ........16

*Ramanadham v. New Jersey Mfrs. Ins. Co.,* 188 N.J.Super. 30, 33 (App. Div. 1982) ..........................................................................................10

*Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011).......................................14

*Roe v. Operation Rescue,* 919 F.2d 857, 864 (3d Cir. 1990)..................................29

*S. Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 399 (D.N.J. 2007)..........................................................................................19

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) ...........................8

*Shaw v. Hous. Auth. of Camden*, No. 11-4291, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012)...........................................................................16

*State v. Lemken*, 136 N.J. Super. 310, 318 (App. Div. 1974)...................................9

*Stephenson v. Bell Atl. Corp.*, 177 F.R.D. 279, 290 (D.N.J. 1997) ........................21

*Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 250 (2005) .............22, 23

*Travelers Indem. Co. v. Cephalon, Inc.,* 32 F. Supp. 3d 538, 550-51 (E.D. Pa. 2014), *aff'd*, 620 F. App'x 82 (3d Cir. 2015) ..........................................15

*USI Int'l, Inc. v. Festo Didactic, Inc.*, No. 15-08451, 2016 WL 4487858, at *2 (D.N.J. Aug. 24, 2016)...................................................................15

# CASES

*United States v. Frey*, 42 F.3d 795, 797 (3d Cir. 1994)............................................10

*United States v. Hannigan*, 27 F.3d 890, 892 (3d Cir. 1994) ..................................10

*Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998) .......19, 20

*Warth v. Seldin,* 422 U.S. 490, 502 (1975)................................................................30

*Weinberg v. Sprint Corp.,* 173 N.J. 233, 237 (2002)...............................................21

*World Express & Connection, Inc. v. Crocus Invs., LLC*, No. 15-8126, 2017 WL 4516465, at *4 (D.N.J. Oct. 10, 2017).......................................................23

# FEDERAL STATUTES

Federal Rules 12(b)(1) ................................................................................................1

Federal Rules 12(b)(6) .............................................................................................1, 8

Rule 9(b).....................................................................................................................3

# STATE STATUTES

11 N.J. Admin. Code § 11:3-10.4 ...........................................................................12

New Jersey Consumer Fraud Act ("CFA") ...............................................................3

New Jersey Racketeer Influenced and Corrupt Organizations Act ("NJRICO")......3

N.J. Stat. Ann. § 2C ..............................................................................................9, 26

N.J.S.A. § 56:8 .............................................................................................10, 19, 23

# WEBSITES

https://www.state.nj.us/dobi/ins_ombudsman/wysk2.htm .................................13, 14

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SALIT AUTO SALES, INC. d/b/a SALIT
AUTO SALES on behalf of others similarly
situated,

       Plaintiff ,

                                    No. 2:19-cv-18107-JMV-MF

v.

CCC INFORMATION SERVICES, INC.;
LIBERTY MUTUAL GROUP, INC.;
LIBERTY MUTUAL HOME AND AUTO
SERVICES LLC, d/b/a LIBERTY MUTUAL
FIRE INSURANCE COMPANY AND
WAUSAU UNDERWRITERS INSURANCE
COMPANY,

       Defendants.
_____/

## LIBERTY MUTUAL'S  MOTION TO DISMISS
## <u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

       Defendants, Liberty Mutual Group, Inc., Liberty Mutual Home and Auto

Services, LLC, and Wausau Underwriters Insurance Company (collectively

"Liberty Mutual"), by and through their undersigned counsel, have filed a Motion

to Dismiss the First Amended Complaint ("FAC" or "Amended Complaint") of

Plaintiff, Salit Auto Sales, Inc. ("Salit"), pursuant to Federal Rules 12(b)(1) and

12(b)(6).  In support of its Motion, Liberty Mutual states as follows:

## **INTRODUCTION**

The Court should dismiss the entire Amended Complaint with prejudice for two very simple reasons.  ***First***, Salit has pled itself out of court by repeatedly alleging that it was not deceived by Liberty Mutual's actions.   Both the original Complaint and Amended Complaint allege that, as a result of Salit's extensive industry knowledge and experience, it was aware of Defendants' alleged scheme to undervalue total loss insurance claims.  These frank admissions are fatal to each of Salit's fraud-based claims since it is now impossible for Salit to prove reliance or establish a causal connection between Salit's alleged injury and the Defendants' alleged misrepresentations.

***Second***, Liberty Mutual complied with New Jersey law when it used a CCC valuation report to value Salit's vehicle.  Pursuant to the regulations governing the handling of total loss claims, insurers are allowed to use three different methods to value and settle  total loss claims.  One of those methods is an electronic database maintained by a company approved by the Commissioner of the New Jersey Department of Banking and Insurance.  Because the Commissioner has expressly approved the use of CCC valuation reports as a means of valuing and resolving total loss claims, Liberty Mutual's reliance on a CCC valuation report to estimate the value of Salit's vehicle was not, as a matter of law, improper.  As a result, each of Salit's remaining claims necessarily fail.

- 2 -

Both of the foregoing arguments call for dismissal of the entire Amended Complaint with prejudice.  In the alternative, the Court should at least force Salit to go back to the drawing board and re-plead its claims for a whole host of additional reasons.  In particular, Salit has not alleged a cognizable injury under Article III. Although Salit alleges that Liberty Mutual undervalued its vehicle, Salit does not allege that it accepted the settlement offered by Liberty Mutual and therefore lacks the requisite injury needed to sue.  Nor does it explain why it cannot recover on its claim from alternative sources, including its own insurance carrier.

The Amended Complaint also fails to satisfy the heightened pleading standard found in Rule 9(b), which is applicable to each of Salit's claims.  Salit has instead engaged in textbook "group pleading," and as a result, none of the four Defendants know what is being alleged as to them individually.  As CCC points out in its separate motion to dismiss, the Amended Complaint also falls short of the Rule 9(b) standard because it does not identify any particular act, statement, or representation that was fraudulent.

Salit has also failed to adequately allege a claim under the New Jersey Consumer Fraud Act ("CFA") since (a) the CFA does not apply to insurance coverage disputes and (b)  Salit is not a "consumer" under the Act.  Salit's claim under the New Jersey Racketeer Influenced and Corrupt Organizations Act ("NJRICO") is also inadequately pled since the Amended Complaint only includes

- 3 -

one allegedly unlawful act, which is not enough to establish a "pattern of racketeering." Salit also fails to describe the structure of any association-in-fact enterprise under NJRICO, including the enterprise members' relative roles.

The Court should also dismiss Salit's civil conspiracy claim since it is not a stand-alone cause of action and must be premised on some viable underlying claim. Because each of Salit's other claims fail for all the reasons identified above, there is no foundation for a civil conspiracy, and as result, this claim must crumble as well. Finally, regardless of what remains in the case (if anything), the Court should strike Salit's requests for declaratory and injunctive relief. Salit has no standing to pursue those claims since Salit's alleged injury occurred in the past and any potential future loss is speculative and hypothetical.

## BACKGROUND

Salit is a used car dealership located in Edison, New Jersey. FAC ¶ 15. Salit alleges that it listed a 2011 Cadillac CTS Performance Sedan (the "Vehicle") for sale at its dealership in November 2017. *Id.* ¶ 19. According to the Amended Complaint, the Vehicle had 107,852 miles on it but was allegedly still in excellent condition. *Id.* Salit advertised the Vehicle for sale on its own website and on Autotrader.com for a list price of $10,998. *Id.* ¶ 20. On January 21, 2018, a Salit employee was driving the Vehicle when another driver allegedly disregarded a traffic signal and collided with it. *Id.* ¶ 21.

On February 6, 2018, Salit made a third-party property damage claim with the driver's insurer, Wausau Underwriters Insurance Company ("Wausau").  *Id.* ¶ 23.   In response, Wausau sent Salit a valuation report prepared by CCC Information Service ("CCC"), which estimated the value of the Vehicle to be $7,671.00 plus tax ($508.00).  *Id.* at Ex. A.

Although Salit alleges that this original CCC valuation report contained misrepresentations,  Salit makes clear in the original Complaint and the Amended Complaint that it was not deceived by those purported misrepresentations.  Both pleadings explain that, as a result of Salit's specialized knowledge and experience in the auto industry, Salit was aware of Defendants' valuation process and knew that it was allegedly fraudulent.  For example, the original Complaint included the following allegation:

> Because the Plaintiff is a car dealership and the totaled vehicle was part of its active inventory prior to the accident, the ***Plaintiff had special knowledge*** of industry practices and of the pre-accident condition and fair market value of the totaled vehicle, and ***therefore knew*** that the Defendants' uniform "condition" adjustments ***were fraudulent,*** and had no discernable purpose other than to support bad-faith, insufficient initial settlement claim offers.

Compl. [Dkt. No. 1-1] ¶ 14 (emphasis added).  The Amended Complaint likewise alleges that "the Plaintiff ***knew*** that the Defendants had not visited the dealership to inspect the vehicle."  FAC ¶ 10.

Salit then goes on to allege that the only reason it is bringing this class action is to protect other, less-suspecting consumers. For example, in the original complaint, Salit alleges:

> The Plaintiff is concerned that ordinary consumers will not have similar **knowledge**, and therefore, the Plaintiff sees this case as an important opportunity to subject the Defendants' practices to judicial scrutiny, and to permanently enjoin those practices if they are determined to be unlawful.

Compl. [Dkt. No. 1-1] ¶ 15 (emphasis added). Likewise, in the Amended Complaint, Salit alleges that "ordinary consumers will not have the same **opportunity** or **knowledge** to detect the fraudulent nature of Defendants' [activities]." FAC ¶ 13 (emphasis added).

Salit and its attorneys voiced these same concerns in pre-litigation correspondence to Wausau. Salit objected to the initial valuation and requested additional information from Wausau. *Id.* at ¶¶ 75-80. Wausau reviewed the file and sent Salit an updated CCC valuation report on March 6, 2018. *Id.* ¶ 82, Ex. E. The updated CCC valuation report explained that in calculating the value of the subject vehicle, CCC compared multiple vehicles located up to 61 miles from Salit's place of business in Edison, New Jersey. *Id.* at Ex. E. The CCC report also provided a detailed analysis of how CCC arrived at the final valuation, including specific line item information regarding any adjustments made as a result of age, miles, or condition of Salit's vehicle. *Id.* Wausau ultimately offered $8,969.30 to

- 6 -

settle the claim.  *Id.*  This amount represented the revised, estimated value of the Vehicle ($8,659.00), minus a condition adjustment ($247.00), and plus taxes ($557.30).  *Id.*

After sending Salit the second valuation report, Wausau invited Salit to make a claim through its own insurance carrier if it was still dissatisfied with the valuation amount.  *Id.* ¶ 80.  Instead of seeking coverage through its own insurance, however, in March 2018, Salit's attorney began sending emails to Wausau demanding information regarding the Defendants' valuation process.  *Id.* ¶¶ 86-87.  Salit's attorney also sent another series of emails to  in November 2018, this time demanding information regarding the condition adjustments used in CCC's valuation reports.  *Id.*  ¶¶ 89-92.

Salit has not alleged that it accepted the settlement offered by Wausau.  Nor does Salit allege that it ever sought coverage for the claim at issue through its own insurance carrier.  Instead, Salit filed this purported class action lawsuit.  Although Salit is a third-party insurance claimant, Salit proposes to represent a class of both first-party and third-party claimants that submitted total loss claims to Liberty Mutual.  *Id.* ¶ 95.  Salit alleges four causes of action, including (1) violations of the NJRICO, (2) violations of the CFA, (3) common law misrepresentation, and (4) civil conspiracy.  In addition to damages, Salit seeks declaratory and injunctive

- 7 -

relief ordering the Defendants to immediately cease all activities that violate New Jersey law. *Id.* ¶ 135.

## ARGUMENT

In order to survive Rule 12(b)(6) motion, a complaint must allege a "claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Courts in the Third Circuit conduct a three-part analysis in determining whether a complaint sets forth a plausible claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* Second, the court should identify and disregard any conclusory allegations. *Id.* at 131. Finally, the court should determine if the remaining allegations "plausibly give rise to an entitlement for relief." *Id.*

**I.      The Court Should Dismiss The Amended Complaint With Prejudice In Light Of Salit's Allegation That It Was Not Deceived By Liberty Mutual.**

The Could should dismiss Salit's Amended Complaint with prejudice since Salit has pled itself out of court by affirmatively alleging it was not deceived by the CCC report or Wausau's valuation of the Vehicle. As described above, Salit's original Complaint and the Amended Complaint contain multiple paragraphs explaining that Salit was aware of Defendants' allegedly fraudulent activities at all relevant times. Compl. ¶¶ 14-15; FAC ¶¶ 10, 13. Despite all these misgivings,

however, Salit chose to submit its third-party insurance claim to Wausau instead of its own first-party insurance carrier – perhaps in an effort to bait Defendants into this lawsuit.

Whatever the motivation, Salit's forthright admissions that it was not deceived by Defendants' actions are fatal to each of Salit's causes of action.  To prove a claim of misrepresentation under New Jersey law, the plaintiff must prove that the plaintiff justifiably relied on the defendant's misstatement and was injured as a consequence of relying upon that statement.  *Pharmacy & Healthcare Commc'ns, L.L.C. v. Nat'l Cas.Co.*, No. A-0382-14T3, 2015 WL 10793944, at *4 (N.J. App. Div. May 11, 2016).  Because Salit has affirmatively alleged that it never "relied" on any alleged misrepresentations, the Court should dismiss Salit's common law misrepresentation claim (Count III) with prejudice.

Likewise, Salit cannot prove the predicate acts listed in the Amended Complaint (theft by deception, deceptive business practices, mail fraud, wire fraud) necessary to support its NJRICO claim (Count I).   To state a claim of theft by deception, the victim must have actually relied on the deception. *See State v. Lemken*, 136 N.J. Super. 310, 318 (App. Div. 1974).  Similarly, to state a claim for a violation of the deceptive business practice act, a person must make a "false or misleading written statement for the purpose of obtaining property or credit." N.J. Stat. Ann. § 2C:21-7(h).  To state a claim for mail or wire fraud, a plaintiff must

- 9 -

allege: (1) a scheme or artifice to defraud; (2) use of the mails or interstate wires in furtherance of the scheme; and (3) participation by the defendant in the scheme. *United States v. Hannigan*, 27 F.3d 890, 892 (3d Cir. 1994); *see also United States v. Frey*, 42 F.3d 795, 797 (3d Cir. 1994). In the present case, Plaintiff has not claimed that it relied on Defendants' alleged deception, nor has Plaintiff alleged that Wausau or any other Liberty Mutual entity actually obtained property or a thing of value from Salit. Nor could it. As a third-party to Wausau's insurance policy, Salit cannot complain that it paid premium for a policy that promised actual cash value for the Vehicle.

Salit's CFA claim (Count II) is likewise doomed as a result of its admissions in the original Complaint and Amended Complaint. Although reliance is not an element of a CFA claim, a private plaintiff must still prove a causal nexus between the alleged misrepresentation and its purported damages. *See Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105, 122–23 (App. Div. 2005); *see also Ramanadham v. New Jersey Mfrs. Ins. Co.,* 188 N.J.Super. 30, 33 (App. Div. 1982)) ("The 'causation' provision of N.J.S.A. 56:8–19 requires plaintiff to prove that the unlawful consumer fraud caused his loss.").

For example, in *Lewis v. GEICO*, No. 18-cv-05111, 2019 U.S. Dist. LEXIS 41403 (D.N.J. March 11, 2019), this Court considered a similar complaint by an insured who alleged that GEICO improperly valued its first-party total loss claim

using a CCC valuation report.  The Court dismissed the plaintiffs' CFA claim because thrust of plaintiffs' allegations was that GEICO did not pay what was owed under the policy at issue – not that GEICO made any specific misrepresentations to plaintiffs.  *Id.* at *12.  Accordingly, the court found that there was no causal connection between any alleged misstatements and plaintiffs' damages: "if Plaintiffs suffered any loss, it was because GEICO did not pay the benefits to which Plaintiffs claim to be entitled, not because GEICO misrepresented anything to them."  *Id.*

The Court should reach the same result here.  Salit has affirmatively alleged that there is no connection between Defendants' alleged misrepresentation and any damages it has suffered.  As in *Lewis*, Salit's claim is simply that Wausau did not offer it enough for its total loss claim.  Salit's claim is not casually connected to any specific misrepresentation.  Since it is not a standalone claim, Salit's civil conspiracy claim also fails for all of the same reasons.

At bottom, Salit's own allegations have made this case ripe for dismissal at an early stage.  The Court should therefore dismiss the Amended Complaint with prejudice.

## II.    <u>Wausau Complied With New Jersey Law By Using A CCC Valuation Report</u>.

Salit's claim that Defendants acted "unconscionably" and "unlawfully" in valuing total loss vehicles is also completely undermined by the fact that Liberty

Mutual used a CCC valuation report to value Salit's vehicle.  Section 11:3-10.4 of Title 11 of the New Jersey Administrative Code gives insurers three options for valuing total loss claims.[1]  One of those options is the use of an electronic database maintained by certain approved companies.  11 N.J. Admin. Code § 11:3-10.4.  CCC is one of those approved companies.  As the New Jersey Department of Banking & Insurance explains on its website:

> Each insurance company is required to select one of three prescribed methods for use in the settlement of all their total loss claims.  The three methods which have been approved by the Commissioner of Banking and Insurance are:
>
> 1.  Taking the average of the retail values of substantially similar vehicles as listed in the current editions of the "Automobile Red Book" (or "Older Car Red Book") published by Penton Media and the "N.A.D.A. Official Used Car Guide" (or "N.A.D.A. Official Older Car Guide") published by the National Automobile Dealers Used Car Company.
>
> 2.  Using a quote obtained by the insurer for a substantially similar vehicle available for you to purchase from a dealership within 25 miles of where your car is normally garaged.
>
> 3.  Utilizing the services of an approved source, including computerized databases that produce fair market values of substantially similar vehicles.  ***At this time Audatex, Mitchell***

---

[1]       Salit's original complaint made extensive reference to N.J.A.C. 11:3-10.4 Compl. [Dkt. 1-1] ¶¶ 26-29, 128(a).  All of those references were dropped in the Amended Complaint, presumably because Salit reviewed those Administrative Code provisions and discovered that use of a CCC valuation report is expressly authorized under the applicable regulations.

*International and CCC are approved for use in determining fair market values.*[2]

Salit's Amended Complaint alleges that Wausau used a CCC report to value the subject vehicle in compliance with New Jersey law.  *See, e.g.*, FAC ¶ 1.  There are no allegations in the Amended Complaint that it Mutual manipulated the report's format or data or knew that it was somehow flawed.  Nor are there any allegations that Salit was deceived by anything Wausau did or said *outside of* the CCC report itself.  Because Wausau's actions were expressly authorized by the state's insurance regulations, they cannot give rise to a claim for a violation of the New Jersey RICO or consumer fraud statutes against Liberty Mutual.  The Court should therefore dismiss the entire Amended Complaint with prejudice.

## III. Salit Has Not Alleged An Injury-In-Fact.

The Amended Complaint is also fundamentally flawed because Salit does not allege an injury or explain whether it has exhausted all of its other available remedies.  In order to have Article III standing, a plaintiff must have: (1) suffered an injury in fact that is; (2) fairly traceable to the challenged conduct of the defendant; and that is (3) likely to be redressed by a favorable judicial decision. *See In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 284 (3d Cir. 2018).  In order to satisfy the injury-in-fact

---

[2]     State of New Jersey, Department of Banking & Insurance, Filing an Auto Damage  Claim with Another Insurance Company, *available at* https://www.state.nj.us/dobi/ins_ombudsman/wysk2.htm#16 (emphasis added).

element, the plaintiff must prove that: (a) "he or she suffered an invasion of a legally protected interest[,]" (b) "the injury is both concrete and particularized[,]" and (c) "his or her injury is actual or imminent, not conjectural or hypothetical." *Id.* (citations omitted); *see N.J. Physicians, Inc. v. President of U.S.,* 653 F.3d 234, 241 (3d Cir. 2011). An injury-in-fact must be concrete in both a qualitative and temporal sense. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011).

In the present case, Salit does not even allege that it ever accepted Wausau's settlement offers. According to Plaintiff's allegations, the only thing that has occurred at this point is the exchange settlement offers, *id.* ¶¶ 75-79, which do not constitute a concrete and particularized harm. Further, Salit has other avenues for relief, including its own insurance. New Jersey law allows a claimant in Salit's position to seek reimbursement from either its own insurance (first-party) or the driver's insurance (third-party).[3] Indeed, the New Jersey Department of Banking and Insurance **recommends** that a party seek insurance coverage from its own carrier if it believes the third-party insurer has undervalued its claim.[4]

---

[3]     State of New Jersey, Department of Banking & Insurance, Filing an Auto Damage Claim with Another Insurance Company, *available at* https://www.state.nj.us/dobi/ins_ombudsman/wysk2.htm.

[4]     *Id.* (recommending that insured "[m]ake a claim under your own policy" if insured is unable to settle with third-party insurer.).

Accordingly, Salit has not yet alleged a cognizable injury and therefore lacks standing.

## IV.    **Salit Has Failed To Comply With Rule 9(b).**

The Court should also order Salit to re-plead since the Amended Complaint does not come close to satisfying Rule 9(b).  Rule 9(b) applies to each of Salit's claims.  *See, e.g.*, *Jaye v. Oak Knoll Vill. Condo. Owners Ass'n, Inc.*, 751 F. App'x 293, 297-98 (3d Cir. 2018) (applying Rule 9(b) to RICO claims predicated on acts of mail and wire fraud); *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 530 (D.N.J. 2011) (applying Rule 9(b) to CFA and negligent misrepresentation claims); *see also Travelers Indem. Co. v. Cephalon, Inc.*, 32 F. Supp. 3d 538, 550-51 (E.D. Pa. 2014), *aff'd*, 620 F. App'x 82 (3d Cir. 2015) (applying Rule 9(b) to negligent misrepresentation claim).

To satisfy the pleading standard under Rule 9(b), plaintiffs must "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  *USI Int'l, Inc. v. Festo Didactic, Inc.*, No. 15-08451, 2016 WL 4487858, at *2 (D.N.J. Aug. 24, 2016). Plaintiffs must identify both the individual who made the misrepresentation and the person to whom the misrepresentation was made.  *Id.*

A plaintiff cannot satisfy Rule 9(b) through "group pleading" by lumping all the defendants together and making generic allegations against them.  As this

Court has previously explained, "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'." *Id.*; *see also Poling v. K. Hovnanian Enterprises*, 99 F. Supp. 2d 502, 508 (D.N.J. 2000) ("allegations that generally allege fraud as against multiple defendants, without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed do not satisfy Rule 9(b)"). In fact, group pleading cannot satisfy the lower standard of Rule 8 either. *Falat v. Cty. of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013). "Even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants." *Shaw v. Hous. Auth. of Camden*, No. 11-4291, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) (citation omitted).

The Amended Complaint is a textbook example of improper group pleading. Although there are four separate defendants, Salit lumps all the defendants together in each count of the Amended Complaint. In the NJRICO Claim (Count I), Salit alleges that all the "Defendants" committed theft and wire fraud and a "pattern of racketeering activity." FAC ¶¶ 114-15. For the CFA claim in Count II, Salit similarly alleges that "Defendants' practices" violate New Jersey law. *Id.* ¶ 120. In Salit's common law misrepresentation claim, Salit alleges that "Defendants made written false statements," that "Defendants had knowledge," and that "Defendants acted with reckless disregard as to the falsity" of the

statements at issue.  *Id.* ¶ 128.  Likewise, Salit's civil conspiracy claim in Count IV alleges that "Defendants have acted in concert" and that "Defendants have agreed to employ fabricated and arbitrary condition adjustments."  *Id.* ¶¶ 133-34.  None of these counts explain which Defendants did what.

The body of the Amended Complaint is not any better.  The first 10 paragraphs all refer to the "Defendants" (plural) without explaining which Defendants Salit is referring to.  *See, e.g.,* FAC ¶¶ 2-10.  The next section relates to Salit's accident and its subsequent correspondence with one of the Defendants that Salit refers to as "Liberty Mutual," although it is not clear to which of the multiple Liberty Mutual defendants it is referring.  *Id.* ¶¶ 19-42.  The Amended Complaint next describes "Defendants'" purported misrepresentations in the market valuation reports provided to Salit, again without explaining to which Defendant it is referring.[5]  *Id.* ¶¶ 43-93.  Salit's class action allegations similarly lump all four "Defendants" together.  *Id.* ¶¶ 94-107.

As CCC points out in its motion, the Amended Complaint also fails to satisfy Rule 9(b) since Salit does not allege any deceptive act, statement, or practice, or "unlawful practice" with particularity.  CCC Br. in Support of Mot. to Dismiss at pp. 8-10.  The disagreement and correspondence between Salit and

---

[5]     Plaintiff makes no effort to explain why it has named  Liberty Mutual Group, Inc. or Liberty Mutual Home and Auto Services, LLC as Defendants in this case when it is clear from the CCC valuation reports that the insurance company involved was Wausau.

Liberty Mutual does not constitute fraud.  *Id.* at 9.  As CCC further explains, the reason why Salit cannot satisfy Rule 9(b) is because CCC's valuation methodology was fully disclosed to Plaintiff as merely CCC's *opinion*, which is not actionable as fraud under New Jersey law.  *Id.* at 8-9.  Rather than repeat those arguments again here, Liberty Mutual incorporates them by reference.

The bottom line is that this case cannot proceed intelligently using the Amended Complaint (assuming it should proceed at all).  As a result of Salit's group pleading, none of the four Defendants know what is being alleged against them individually.  The Amended Complaint also fails to identify any particular act, statement, or representation that is allegedly fraudulent.  Because the Amended Complaint does not come close to satisfying Rule 9(b), the Court should dismiss it.

## V.   <u>The Court Should Dismiss Salit's CFA Claim For Additional Reasons</u>.

### A.   **Insurance Coverage Claims Are Not Subject to the CFA.**

The Court should dismiss Salit's CFA claim for an additional reason:  it relates to an insurance coverage dispute that is not subject to the CFA.  The CFA protects "consumers who purchase 'goods or services generally sold to the public at large.'"  *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) (citation omitted); *see also Arc Networks, Inc. v. Gold Phone Card Co.*, 333 N.J. Super. 587, 590 (Law. Div. 2000) ("The entire thrust of the [CFA]  is 'pointed to products and services sold to consumers in the popular sense.'").  To qualify as a

36173868.3

consumer transaction, the challenged services must be of the type that "are sold to the general public." *See S. Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 399 (D.N.J. 2007); *see also* N.J.S.A. § 56:8-1(c) ("merchandise" includes goods, services, or anything offered directly or indirectly to the public for sale).

While New Jersey Courts have recognized that the ***sale*** of insurance qualifies as "goods and services that are marketed to consumers" subject to the CFA, disputes over insurance ***coverage*** do not fall within the scope of the CFA. *See Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 265 (1997); *see also Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998); *Myska v. New Jersey Mfrs. Ins. Co.*, 440 N.J. Super. 458, 485 (App. Div. 2015) (holding that the CFA "was not intended as a vehicle to recover damages for an insurance company's refusal to pay benefits").

The reason is simple: the regulation of insurance payment and coverage issues are within the "exclusive regulatory jurisdiction" of the Department of Insurance and its administrative rules and regulations. *See, e.g. Pierzga v. Ohio Cas. Grp. of Ins. Cos.*, 208 N.J. Super. 40, 47 (App Div. 1986) (noting that "exclusive regulatory jurisdiction of insurance companies, at least with respect to the payment of claims, is within the Department of Insurance"); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F. Supp. 584, 618 (D.N.J. 1996) (stating that "[t]o allow plaintiffs' [CFA] claims would clearly subject . . . insurance

companies to the oversight of two different state agencies, creating risks of contradictory regulations and factual determinations").

For example, in *Van Holt*, plaintiffs purchased a flood insurance policy that was issued by defendant, Liberty Mutual. *Van Holt*, 163 F.3d at 163. The plaintiffs asserted a CFA claim against the defendant based on, among other things, its decision to deny their claims. *Id.* at 168. In affirming the district court's dismissal of the CFA claim, the Third Circuit held that "[t]he mere denial of insurance benefits to which the plaintiffs believed they were entitled does not comprise an unconscionable commercial practice [in violation of the CFA]." *Id.* The Third Circuit noted that New Jersey courts that have dealt with this issue have repeatedly "held that the payment of insurance benefits is not subject to the [CFA]." *Id.*

Here, Salit's claims are wholly unrelated to the sale or marketing of an insurance policy. Salit never purchased an insurance policy from Wausau or the other Liberty Mutual entities named in the complaint. Plaintiff instead disputes the amount of the settlement offers made by Wausau, as well as the method used in the CCC Reports to calculate such offers, in connection with a third-party claim made against Wausau. Consistent with the decisions set forth above, this claim does not fall within the purview of the CFA. *See Lemelledo*, 150 N.J. at 265; *Van Holt*, 163 F.3d at 168; *Myska*, 440 N.J. Super. at 485. To subject Wausau or the other

Liberty Mutual defendants to a CFA claim based on the use of the CCC Reports would not only interfere with the "exclusive jurisdiction" of the New Jersey Department of Banking and Insurance ("DOBI"), it would subject insurers like Liberty Mutual to the very type of inconsistent and uncertain regulatory environment that New Jersey Courts try to avoid.

### B. Plaintiff Has Not Alleged an "Ascertainable Loss."

Salit also cannot proceed with its CFA claim because it fails to allege another key element of that claim, an ascertainable loss. The CFA requires that plaintiffs show an "ascertainable loss" of money or property as the result of defendant's conduct. *See Carroll v. Cellco P'ship*, 313 N.J. Super. 488, 502 (App. Div. 1998); *Stephenson v. Bell Atl. Corp.*, 177 F.R.D. 279, 290 (D.N.J. 1997) ("Under the CFA, private plaintiffs must also demonstrate that they "suffered an ascertainable loss . . . as a result of the unlawful conduct."). "[T]o have standing under the Act a private party must plead a claim of ascertainable loss that is capable of surviving a motion for summary judgment." *Weinberg v. Sprint Corp.,* 173 N.J. 233, 237 (2002).

The amount of the loss must be ascertainable and must be established with reasonable certainty. *Dabush*, 378 N.J. Super. at 116. "A private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff

suffered an actual loss." *Id.* at 1120. Evidence of hypothetical future damages is insufficient. *Dabush*, 378 N.J. Super. at 123–24.

Furthermore, the New Jersey legislature distinguishes CFA actions that are brought by private individuals, which are limited to those who "actually experience a loss" due to a consumer fraud violation, from a broader category of actions that may be brought by the Attorney General, which encompass circumstances where there is no ascertainable loss to an individual but there exists an industry practice that the State seeks to curtail. *E.g. Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 250 (2005).

Applying these principles, the New Jersey Supreme Court has held that an automobile warranty program was part of the plaintiff's benefit-of-the-bargain, and the plaintiff could not bring a CFA claim where the automobile company fully honored the warranty. *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 252, 872 A.2d 783, 795 (2005) (overturning the Appellate Court, granting summary judgment, and specifically holding that "subjective assertions without more are insufficient to satisfy the requirement of an ascertainable loss that is expressly necessary for access to the CFA remedies").

Here, Salit has not pleaded an ascertainable loss with reasonable certainty because, as explained above, Salit has not accepted Wausau's ofer and it has not exhausted other avenues of relief, including Salit's own insurance. As in

*Thiedemann*, Wausau has fully honored its contract with its insured. Salit's assertions of an "ascertainable loss" are subjective. Because Salit has not alleged an ascertainable loss, the Court should dismiss its CFA claim.

**C.   Plaintiff Does Not Qualify as a "Consumer" Within the Meaning of the CFA**

Salit admits it is a used car dealer who has "specialized" knowledge of the value of the subject vehicle and the automobile industry. It further admits that the subject vehicle was in the process of being advertised for sale and was being driven for "business" purposes when it was involved in the underlying accident. These undisputed facts remove Salit from the protections and purpose of the CFA and require the dismissal of its CFA claim against Liberty Mutual.

In order to have standing to bring an action under the CFA, a plaintiff must be a "consumer." *World Express & Connection, Inc. v. Crocus Invs., LLC*, No. 15-8126, 2017 WL 4516465, at *4 (D.N.J. Oct. 10, 2017). However, the CFA does not define the term "consumer." *See* N.J.S.A. 56:8-1. Generally, New Jersey Courts interpret "consumer" to mean "one who uses (economic) goods, and so diminishes or destroys their utilities." *See Hundred E. Credit Corp. v. Eric Shuster Corp.*, 212 N.J. Super. 350, 355, (App. Div. 1986) (internal quotation marks and citation omitted). As to cases involving corporate plaintiffs, the Appellate Division has held that "protections under the CFA . . . extend[] to corporate plaintiffs 'in a consumer orientated situation.'" *Papergraphics Int'l, Inc. v. Correa*, 389 N.J.

Super. 8, 12 (App. Div. 2006) (citations omitted); *see also Interlink Prods. Int'l, Inc. v. Cathy Trading, LLC*, No. 16-2153, 2017 WL 931712, at *2-3 (D.N.J. Mar. 9, 2017) (stating that business entities must allege "consumer-like injuries.").

New Jersey Courts have held "that a wholesale buyer of goods intended for resale is not a 'consumer,' and the sale is a non-consumer transaction outside the ambit of CFA protection." *Papergraphics Int'l, Inc.*, 389 N.J. Super. at 13; *see also Conte Bros. Auto. v. Quaker State-Slick 50, Inc.*, 992 F. Supp. 709, 716 (D.N.J. 1998) (stating that "commercial resellers . . . do not qualify as 'consumers'" under the CFA). In *Papergraphics*, a corporate plaintiff purchased counterfeit printer ink jet cartridges from the defendant and brought a CFA claim against it. *Papergraphics Int'l, Inc.*, 389 N.J. Super. at 9-10. The Appellate Division analyzed several factors to determine whether the corporate plaintiff qualified as a "consumer" under the CFA, including that (1) the plaintiff resold the purchased goods at a large profit rather than for its own individual use; (2) "the parties were experienced commercial entities of relatively equal bargaining power[;]" and (3) "[p]laintiff was not an unsophisticated buyer, suffering a disparity of industry knowledge[.]" *Id.* at 14. Ultimately, the court held that the plaintiff was not a "consumer" under the CFA. *Id.* The same conclusion should follow here.

Application of the factors discussed in *Papergraphics* demonstrates that Salit is not a "consumer" within the meaning of the CFA.  As to the first factor, Salit is a used car dealership that purchases vehicles for resale to consumers, undeniably at a profit.  Salit's intent to sell the subject vehicle in this case is evidenced by its actions of listing the vehicle for sale at its dealership in November 2017 and posting advertisements on its own website as well as on Autotrader.com. (Compl., ¶¶ 21-22; FAC ¶¶ 19-20).  In the Complaint, Salit states that on the date of the car accident which ultimately gave rise to its third-party damage claim, "a Salit employee was driving the subject vehicle on dealership business . . . ." (Compl., ¶ 23; FAC ¶ 21).  Therefore, the subject vehicle was being used for business purposes rather than for individual use.  As to the second and third factors, Salit concedes that it is a sophisticated entity with "special knowledge of industry practices. . . ."  (Compl. ¶ 14).  In fact, Salit contends that it was its specialized knowledge that enabled it to discover the alleged fraudulent valuation process.  *Id.*  Further, in the Complaint, Salit distinguishes itself from average consumers by maintaining that it is "concerned that ordinary consumers will not have similar knowledge . . . ."  (Compl., ¶ 15).

In sum, New Jersey Courts have made it clear that the CFA was not enacted to protect resellers of products or services like Salit.  At its core, Salit is seeking reimbursement for a vehicle that it was in the process of reselling and it admittedly

is a sophisticated entity with "specialized knowledge" of the subject vehicle's value and the automobile industry generally.   In fact, it was this "specialized knowledge" that Salit claims it relied upon in determining the alleged fraudulent statements in the CCC Report and declining Liberty Mutual' s offer to resolve its claim.  Thus, Salit is not and cannot be a "consumer" within the ambit of the CFA and its CFA claim must be dismissed as a matter of law.

## VI.   The Court Should Dismiss Plaintiff's NJRICO Claim.

Salit's NJRICO claim fares no better. The Court should dismiss it since Salit has failed to allege a pattern of racketeering activity or an enterprise.

### A.   Salit Has Not Alleged a Pattern of Racketeering Activity.

NJRICO requires a "pattern of racketeering."   To establish a pattern of racketeering, each defendant must have committed two or more racketeering acts within the last 10 years. N.J.S.A. § 2C:41-1(d).  Proving a pattern of racketeering requires plaintiffs to show that the racketeering predicates are related and that they amount to or pose a threat of continued activity. *Germinaro v. Fid. Nat'l Title Ins. Co.*, 737 F. App'x 96, 101-02 (3d Cir. 2018). Predicate acts are related if the activities have the same or similar purposes, results, participants, victims, methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. *Id.* A single incident does not constitute a "pattern of

racketeering." *Banks v. Wolk*,  918 F.2d 418, 422 (3d Cir. 1990).

In the Amended Complaint, Salit has  alleged that the Defendants committed one, isolated violation of NJRICO: a purported undervaluation of a single, third-party insurance claim. Because one incident does not constitute a "pattern" of racketeering activity and does not pose a continued threat to Salit, the Court should dismiss Salit's NJRICO claim.

### B.     Salit Has Not Alleged an Association-in-Fact Enterprise.

In addition, Salit has not sufficiently alleged an "association of fact" enterprise. To establish such an enterprise under New Jersey law, a party must show: (1) that the enterprise is distinct from the incidents constituting the pattern activity; and (2) that the enterprise has an "organization" consisting of the "kinds of interactions that become necessary when a group, to accomplish its goals, divides among its members the tasks that are necessary to achieve a common purpose." *Dare Investments, LLC v. Chicago Title Ins. Co*., No. CIV. 10-6088 DRD, 2011 WL 2600594, at *9 (D.N.J. June 29, 2011).[6]

The Amended Complaint does not allege any of these elements.  Instead, Salit simply alleges that Wausau retained CCC to provide valuation reports for

---

[6]     In interpreting NJRICO, courts often turn to the federal RICO statute and case law for guidance. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 245-46 (3d Cir. 2012) ("Since the [] Complaint's federal and New Jersey RICO claims parallel each other, and because the two RICO statutes are intended to be coextensive, we follow the District Court's approach and analyze the two claims concurrently").

total loss vehicles.  There are no allegations regarding the "common purpose" of the alleged enterprise. There is no explanation as to how the predicate incidents are distinct from the alleged enterprise. And there is no description of the "tasks" of each member within the enterprise or description how the alleged enterprise differs from the contractual arrangement between Liberty Mutual and CCC.  If an enterprise could be alleged on these bare facts, an "association in fact" could be established for any corporate defendant and its third-party vendor or agent.  Without more specific allegations regarding the alleged enterprise, the Court should dismiss the NJRICO claim.

**VII.**   **Salit's Civil Conspiracy Claim Fails.**

Finally, Salit's civil conspiracy claim should be dismissed because Salit has not alleged underlying unlawful conduct by Defendants, let alone an agreement between Wausau and CCC to achieve some unlawful purpose or to utilize some unlawful means to cause Salit harm. There are four elements to the tort of civil conspiracy: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages. *See Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414–15 (3d Cir. 2003) (citing *Naylor v. Harkins,* 27 N.J.Super. 594 (1953)). In *Board of Ed. of Cty. of Asbury Park v. Hoek,* the New Jersey Supreme

- 28 -

Court explained that "[t]he gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which, absent the conspiracy, would give a right of action." 38 N.J. 213, 238 (1962).

Salit may disagree with how Defendants value total loss vehicles but the use of a CCC report to do so by Wausau has been expressly approved by the state's insurance regulators.  Defendants are not alleged to have done anything to coerce Salit to accept their valuation or to prevent Salit from coming up with its own valuation or filing a claim with its own insurer.  Accordingly, there is no simply basis in the Amended Complaint  which could serve as the foundation for a civil conspiracy claim.  As a result, the Court should dismiss Salit's civil conspiracy claim.

## VIII.  **The Court Should Dismiss Salit's Request For Declaratory And Injunctive Relief.**

The Court should dismiss Salit's request for declaratory and injunctive relief since Salit does not face a substantial likelihood of future injury.   When prospective equitable relief is sought, the plaintiff must show that he is "likely to suffer future injury" from the defendant's conduct. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).  The threat of injury must be "sufficiently real and immediate." *Roe v. Operation Rescue,* 919 F.2d 857, 864 (3d Cir. 1990).  "[P]ast exposure to illegal conduct does not in itself show a present case or controversy

regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects[.]" *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012).

In the class action context, that requirement must be satisfied by the named plaintiff. *See Warth v. Seldin,* 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *see also Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 978 (9th Cir.2011) ("Standing exists if at least one named plaintiff meets the requirements.").

Salit's motor vehicle accident occurred in the past, on January 21, 2018. Salit therefore does not face a substantial threat of future injury.  Any potential future harm is purely hypothetical, particularly given Salit is not a Liberty Mutual policyholder.  Further, Salit cannot rely on the potential future injuries of class members to satisfy the Article III standing requirement. *McNair*, 672 F.3d at 223.  As a result, the Court should strike Salit's requests for declaratory and injunctive relief.

36173868.3

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Liberty Mutual respectfully requests that the Court enter an Order dismissing Salit's Amended Complaint with prejudice.

/s/Ryan DiClemente

Ryan DiClemente
SAUL EWING ARNSTEIN & LEHR LLP
650 Colelge Road East, Suite 4000
Princeton, NJ 08540-6603
609-452-5057
Ryan.DiClemente@saul.com

James A. Morsch (admitted *pro hac vice*)
Casey Grabenstein (admitted *pro hac vice*)
Andrew Bollinger (NJ Bar # 18585-2016)
SAUL EWING ARNSTEIN & LEHR LLP
161 North Clark, Suite 4200
Chicago, IL 60601

Dated: November 8, 2019

36173868.3