<u>Not for Publication</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SALIT AUTO SALES, INC., d/b/a SALIT AUTO SALES, *on behalf of itself and others similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br>CCC INTELLIGENT SOLUTIONS INC., LIBERTY MUTUAL GROUP INC., LIBERTY MUTUAL HOME AND AUTO SERVICES LLC, d/b/a LIBERTY MUTUAL FIRE INSURANCE COMPANY, and WAUSAU UNDERWRITERS INSURANCE COMPANY,<br><br>*Defendants*. | Civil Action No. 19-18107 (JMV) (MF)<br><br><u>**OPINION**</u> |

<u>**John Michael Vazquez, U.S.D.J.**</u>

In this putative class action, Plaintiff alleges that Defendants had a nefarious scheme to settle third-party insurance claims at artificially low amounts. Specifically, based on a single incident, Plaintiff asserts that Defendants provided erroneous information about the value of "comparable" vehicles to establish an improper comparison in making an offer to settle Plaintiff's insurance claim. Plaintiff also alleges, however, that it caught onto the scheme and was not duped. As a result, Plaintiff did not rely on any allegedly improper information, nor did Defendants' actions cause any damage to Plaintiff.

Presently before the Court are two motions to dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by (1) Liberty Mutual Group, Inc. and Wausau Underwriters Insurance Company (collectively,

"Liberty Mutual"), D.E. 40; and (2) CCC Intelligent Solutions, Inc. ("CCC"), D.E. 41. Plaintiff Salit Auto Sales, Inc. d/b/a Salit Auto Sales ("Salit Auto") opposed the motions to dismiss, D.E. 42, 43, and Defendants replied, D.E. 44, 45. The Court reviewed all the submissions in support and in opposition[1] and considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons discussed below, the motions to dismiss are **GRANTED**.

### I.     FACTUAL AND PROCEDURAL BACKGROUND[2]

This putative class action is brought by Plaintiff Salit Auto, a used car dealership located in Edison, New Jersey. SAC ¶ 17. In January 2018, a car Plaintiff owned was damaged in an accident with a third-party. *Id.* ¶ 22. Plaintiff filed a property damage claim with the third-party's insurer, Defendant Liberty Mutual. *Id.* ¶ 23. Liberty Mutual deemed Plaintiff's car to be a "total loss" and made a cash settlement offer to Plaintiff, which was calculated based on a Market Valuation Report prepared by Defendant CCC. *Id.* ¶¶ 25, 29-42. The crux of Plaintiff's allegations is that Defendants were engaged in a conspiracy in which CCC would fabricate and provide inaccurate numbers in "Market Valuation Reports" so that Liberty Mutual could make "low-ball" settlement offers.

---

[1] Liberty Mutual's moving brief will be referred to as "LM Br.," D.E. 40-1. Plaintiff's opposition to Liberty Mutual's motion will be referred to as "LM Opp.," D.E. 42. Liberty Mutual's reply brief will be referred to as "LM Reply," D.E. 44. CCC's moving brief will be referred to as "CCC Br.," D.E. 41-1. Plaintiff's opposition to CCC's motion will be referred to as "CCC Opp.," D.E. 43. And CCC's reply brief will be referred to as "CCC Reply," D.E. 45.

[2] The factual background is taken from the SAC, D.E. 37. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Much of the extensive factual background the Court included in its September 28, 2020 opinion ("Prior Opinion"), D.E. 35, dismissing Plaintiff's First Amended Complaint ("FAC") is realleged in the SAC. The Court incorporates that background by reference here. The SAC omits claims for common law misrepresentation and civil conspiracy, which were raised in the FAC. Additionally, the SAC includes a claim against Defendant Liberty Mutual for "[p]ayment of undisputed portion of claim, pursuant to N.J.A.C. § 11:2-17.8(g)" (Count Three), which was not raised in the FAC. Plaintiff indicates that this is a "non-class claim."

As a brief recap of the procedural history, Plaintiff filed a Complaint against Defendants in New Jersey Superior Court, which Defendants timely removed. D.E. 1. On October 2, 2019, Plaintiffs filed the FAC, D.E. 10, which Defendants moved to dismiss, D.E. 23, 24. This Court granted the motions to dismiss on September 28, 2020, D.E. 35, 36, and gave Plaintiff thirty days to file an amended pleading. Plaintiff filed the SAC on October 28, 2020, D.E. 37. Defendants filed the present motions to dismiss on December 11, 2020, D.E. 40, 41, which Plaintiff opposed, D.E. 42, 43, and to which Defendants replied, D.E. 44, 45. While the current motion was pending, the Court *sua sponte* ordered Defendants to demonstrate the Court's subject-matter jurisdiction. D.E. 48.

## II.   STANDARD OF REVIEW

### A.  Rule 12(b)(1)

To decide a Rule 12(b)(1) motion, a court must first determine whether the party presents a facial or factual attack against a complaint. A facial attack contests "subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack

3

challenges "the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'" *Davis*, 824 F.3d at 346 (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). Here, in seeking dismissal for lack of subject matter jurisdiction, the parties rely solely on Plaintiff's allegations in the Complaint. Accordingly, Defendant presents a facial attack. As a result, like a Rule 12(b)(6) motion to dismiss, "the Court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### B. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions

disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III.   ANALYSIS

#### A. Standing

Liberty Mutual argues that Salit Auto has failed to establish Article III standing because the SAC does not allege that Salit Auto suffered an injury-in-fact. LM Br. at 32-35. CCC similarly argues that Salit Auto's claim fails to establish ripeness because "Plaintiff's only hope of identifying a claim against CCC is contingent upon Plaintiff's future acceptance of the offer from Liberty Mutual." CCC Br. at 22. The Court agrees.

The Constitution provides that "judicial Power" extends to "Cases" and "Controversies[.]" U.S. Const. art. III, § 2. To meet the case-or-controversy requirement, a plaintiff must show that she has standing to sue. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted). To establish Article III standing, a plaintiff "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358-59 (3d Cir. 2015) (internal quotation marks omitted and punctuation modified)).

An injury-in-fact requires a plaintiff to show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A particularized injury means that it "must affect the plaintiff in a personal and

5

individual way." *Id.* at 560 n.1.  A concrete injury refers to one that actually exists; one that is real and not abstract.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citations omitted).  In addition, "'[t]he injury must be concrete in both a qualitative and temporal sense[.]'" *Kamal v. J. Crew. Grp., Inc.*, 918 F.3d 102, 110 (3d Cir. 2019) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).  Here, Salit Auto has not alleged that it suffered a real, concrete injury because it never accepted Liberty Mutual's settlement offers. SAC ¶¶ 97-98.  As a result, the Court grant's Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).[3]

### B. Failure to State a Claim

Because Salit Auto never accepted Liberty Mutual's settlement offer, the SAC also fails to state a claim upon which relief can be granted.

#### 1. NJRICO & NJCFA (Counts One and Two)

Count One is brought against all Defendants and alleges a violation of the New Jersey Racketeer Influenced and Corrupt Organizations Act ("NJRICO"), N.J. Stat. Ann. § 2C:41-1 *et seq.*  In Count Two, which is also brought against all Defendants, Plaintiff alleges a violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1 *et seq.*  Both claims were asserted in the FAC and dismissed in the Prior Opinion.

As discussed in the Prior Opinion, under NJRICO, it is "unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in or activities

---

[3] The Court notes that after the motion to dismiss briefing concluded, Plaintiff indicated in a later filing that it "has neither contested nor averred to the Defendants' challenges to . . . standing under Article III." D.E. 50 at 11.

of which affect trade or commerce." N.J. Stat. Ann. § 2C:41-2(c); *State v. Ball*, 661 A.2d 251, 257-58 (N.J. 1995). A NJRICO claim is comprised of the following elements:

> (1) the existence of an enterprise; (2) that the enterprise engaged in or its activities affected trade or commerce; (3) that defendant was employed by, or associated with the enterprise; (4) that he or she participated in the conduct of the affairs of the enterprise; and (5) that he or she participated through a pattern of racketeering activity.

*State v. Ball*, 632 A.2d 1222, 1236 (N.J. Super. Ct. App. Div. 1993), *aff'd* 661 A.2d 251 (N.J. 1995). Additionally, a plaintiff must satisfy a sixth element – a statutory standing requirement – by showing that "plaintiff's harm was proximately caused by the RICO predicate acts alleged, *i.e.* that there was a direct relationship between plaintiff's injury and defendant's conduct." *Interchange State Bank v. Veglia*, 668 A.2d 465, 472 (N.J. Super. Ct. App. Div. 1995) (quotation omitted); *see also Southward v. Elizabeth Bd. of Educ.*, No. 15-3699, 2017 WL 4392038, at *12 (D.N.J. Oct. 2, 2017).

"NJ RICO confers a private right of action on '[a]ny person damaged in his business or property by reason of a violation of' NJ RICO." *Edgewood Props., Inc. v. J&L Mgmt. Corp.*, No. 08-774, 2009 WL 10690432, *8 (D.N.J. Jan. 27, 2009) (alteration in original) (quoting N.J. Stat. Ann. § 2C:41-4(c)). "The Supreme Court has stated that 'the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation [of RICO].'" *Maio v. Aetna Inc.*, 221 F.3d 472 (3d Cir. 2000) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).[4] A NJRICO claim "requires a party to show standing through an injury that is 'a concrete financial loss and not mere injury to a valuable

---

[4] Although this case is interpreting the federal Racketeer Influenced and Corrupt Organizations Act (RICO), the New Jersey Supreme Court has explained that NJRICO parallels the federal RICO and "because the federal statute served as an initial model for our own, [courts] heed federal legislative history and case law in construing [New Jersey's] statute." *Ball*, 661 A.2d at 258.

intangible property interest.'" *Myrus Hack, LLC v. McDonald's Corp.*, No. 5-2700, 2009 WL 872176, at *9 (D.N.J. Mar. 30, 2009) (quoting *Maio*, 221 F.3d at 483).

As for the NJCFA, as the Prior Opinion detailed, the law prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate." N.J. Stat. Ann. § 56:8-2.  To state a claim under the NJCFA, "a plaintiff must allege '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between' the two." *Hassler v. Sovereign Bank*, 374 F. App'x 341, 343 (3d Cir. 2010) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)).

"To demonstrate an ascertainable loss, the plaintiff must establish an 'actual loss,' that is 'quantifiable or measurable,' or 'real and demonstrable,' as opposed to 'hypothetical or illusory' or 'speculative.'" *Dicuio v. Brother Int'l Corp.*, No. 11-1447, 2012 WL 3278917, at *7 (D.N.J. Aug. 9, 2012) (quoting *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005)). As for the causal relationship element, "[w]hen the basis of the reasonable expectation about the product is a misrepresentation made by the seller, the [NJCFA] requires a direct causal connection between the misrepresentation and the plaintiff's defeated expectations about the product." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d. 84, 100 (D.N.J. 2011).  The plaintiff must "plead that the misrepresentation was made to him or her individually"; "misrepresentations made to the public generally but not the plaintiff do not bear a sufficient nexus." *Id.*

In the Prior Opinion, the Court dismissed both the NJRICO and NJCFA claims because Plaintiff failed to plausibly plead two essential elements: (1) causation or reliance; and (2) damages.  Prior Opinion at 12.  In the FAC, Plaintiff alleged that it possessed knowledge superior

8

to that of an ordinary consumer and was therefore able to detect the fraudulent nature of Defendants' condition adjustments. *Id.* at 12-13. As a result, Plaintiff did not accept Defendants' settlement offer and, therefore, failed to plausibly plead its NJRICO and NJCFA claims. *Id.* at 13.

The SAC suffers from the same deficiencies as the FAC. Plaintiff does not allege that it accepted Defendants' settlement offer or that it relied on Defendants' alleged misrepresentations concerning the value of the loss vehicle. Plaintiff once again indicates that it never accepted Liberty Mutual's settlement offer and it remains in possession of the loss vehicle. SAC ¶¶ 97-98, 100. Plaintiff also alleges that it possessed superior "opportunity and knowledge" to that of an ordinary consumer and was able to "detect the fraudulent nature of CCC's 'condition adjustments.'" *Id.* ¶ 13.

Plaintiff apparently attempts to remedy its lack of damages through a new allegation that Liberty Mutual's March 6, 2018 claim settlement offer of $8,412 plus tax was its "best and final offer." *Id.* ¶ 89. This assertion is not supported by exhibits Plaintiff attached to the SAC – nowhere in the correspondence between Liberty Mutual and Plaintiff does Liberty Mutual indicate that it is making a "best and final" offer. *See* SAC Exhibit D.[5] To the contrary, after providing the settlement offer, the Liberty Mutual representative invited Plaintiff to have his attorney reach out. *Id.*; *see Goldenberg*, 741 F. Supp. 2d at 624 (explaining that when assessing contradictions between a document that is referenced or relied upon in a pleading and the factual allegations in the pleading, the document controls (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir.

---

[5] When reviewing a motion to dismiss, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)). Thus, the Court may consider the correspondence attached to the SAC.

1994)).  In addition, even if correspondence reflected Liberty Mutual's best and final offer, Plaintiff fails to analyze how it suffered legally adequate damages.

Plaintiff also argues that it did not need to accept Liberty Mutual's low settlement offer in order to establish an ascertainable loss under the NJCFA.  LM Opp. at 36.  Plaintiff contends that it was deprived of the "fair and reasonable" settlement value that it was legally entitled to under N.J. Admin. Code § 11:3-10.4, and that this is sufficient to allege an ascertainable loss.  *Id.* at 36-38.  However, Plaintiff ignores this Court's Prior Opinion, which detailed that § 11:3-10.4 explicitly permits an insurer to make a cash settlement offer based on data from a Commissioner-approved database; CCC is one such approved database.  Prior Opinion at 15 (discussing N.J. Admin. Code § 11:3-10.4(a)(3)).  Plaintiff has failed to demonstrate how Liberty Mutual – by following this provision in the administrative Code and making an offer based on a CCC report – violated § 11:3-10.4 and thereby deprived Plaintiff of a right to which it was entitled.  Thus, for the reasons expressed in the Prior Opinion, Plaintiff fails to state a claim against Defendants pursuant to NJRICO and the NJCFA.  As a result, Counts One and Two are dismissed.

### 2. New Jersey Fair Claim Settlement Regulation Violation (Count Three)

Count Three is a new claim brought against Defendant Liberty Mutual.  SAC ¶¶ 141-150. Plaintiff charges Liberty Mutual with a violation of the New Jersey Fair Claim Settlement Regulations, N.J. Admin. Code § 11:2-17.8(g).  The SAC alleges that both Plaintiff and Liberty Mutual agree that "Plaintiff is entitled to payment of the $8,969.30 ($8,412 plus 6.63% sales tax) under the claim." *Id.* ¶ 146.  While the parties dispute whether Plaintiff is entitled to an additional $1,264.63 ($1,186 plus 6.63% sales tax), Plaintiff alleges that Liberty Mutual should pay the undisputed portion of the claim and accept possession of the subject vehicle, and that neither act

would prejudice the parties' claims or defenses concerning the disputed portion of the claim. *Id.* ¶¶ 148-150.

Liberty Mutual argues that Count Three should be dismissed because the New Jersey Unfair Claims Settlement Practices Act does not provide a private cause of action. LM Br. at 30. And even if it did, Liberty Mutual contends that any private right of action would belong to the individual insured by Liberty Mutual and not by Plaintiff. *Id.* at 31.

Section 11:2-17.8(g) of New Jersey's Administrative Code provides as follows:

> Unless otherwise provided by law, in any case where there is no dispute as to one or more elements of a claim, payment for such element(s) shall be made notwithstanding the existence of disputes as to other elements of the claim where such payment can be made without prejudice to either party.

N.J. Admin. Code § 11:2-17.8(g). This provision of the Administrative Code pertains to the New Jersey Unfair Claim Settlement Practice Act, N.J. Stat. Ann. § 17B:30-13.1. *See* N.J. Admin. Code at § 11:2-17.1. New Jersey courts have declared it "well-settled that insureds have no private cause of action under the statute." *Hudson Envtl. Servs., Inc. v. N.J. Prop.-Liab. Ins. Guar. Ass'n*, 858 A.2d 39, 57 (N.J. Super. Ct. Law Div. 2004). As drafted, Count Three fails to state a claim because neither the provision of the New Jersey Administrative Code cited in the SAC, nor the statutory scheme to which it relates, provide a private right of action. As a result, Count Three is dismissed.[6]

### C. Other Deficiencies in the SAC

Finally, the Court notes that the Prior Opinion cautioned Plaintiff as to additional deficiencies from which the FAC suffered. Prior Opinion at 14-16. Plaintiff appears to have only remedied the issue with group pleading. The remaining issues remain uncorrected. The SAC's

---

[6] In light of the foregoing analysis, the Court does not reach Defendants' additional arguments.

NJRICO claim fails to plausibly allege a pattern of racketeering for the same reasons expressed in the Prior Opinion. The SAC also fails to address how Liberty Mutual's reliance on CCC's report – a resource it is statutorily permitted to rely upon – amounted to an improper or unlawful act, other than the conclusory allegation that Liberty Mutual knew of "fabrica[tions]" in the CCC report.[7] SAC ¶ 62.

### D. Subject-Matter Jurisdiction

The Court adds the following comments on subject-matter jurisdiction unrelated to Plaintiff's standing. In its notice of removal, Liberty Mutual asserted that this Court has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). When reviewing the SAC, the Court discovered that the pleading did not allege plausible facts to demonstrate jurisdiction under CAFA. On July 14, 2020, the Court issued an order to show cause, *sua sponte*, requiring Defendants – as the parties invoking the Court's jurisdiction – to submit a legal memorandum detailing the Court's subject-matter jurisdiction. D.E. 48. Defendants submitted a joint brief on July 29, 2021, D.E. 49, to which Plaintiff replied, D.E. 50.

With respect to the size of the class, Defendants submit that a recent review of their records indicates that "there were approximately 4,966 New Jersey third-party automobile property damage claimants who received a cash settlement and whose total loss vehicles were adjusted using a CCC Report from 2016 to present." D.E. 49 ¶ 9. However, Plaintiff argues that this fails to comport with the SAC's definition of the class. The SAC proposes the following class:

---

[7] Plaintiff argues that the approval of the CCC database does not render Defendants immune from liability under the NJCFA and NJRICO, CCC Op. at 28-32; however, the issue raised by the Court in the Prior Opinion concerned the propriety of Liberty Mutual's reliance on the CCC report and not Defendants' immunity. Moreover, Plaintiff contends that CCC's methodology did not comport with the requirements set forth in the Administrative Code but, once again, the Court's concern was with the propriety of Liberty Mutual relying on the report.

> All persons who, during the proposed class period, made a first-party or third-party claim with Liberty Mutual for damage to a motor vehicle determined to be a total loss, in which Liberty Mutual elected to make a cash settlement pursuant to N.J.A.C. § 11:3-10.4, and in which Liberty Mutual based its claim settlement offer on a market valuation report prepared by CCC Information Services *that included negative adjustments to the retail list prices of all "comparable vehicles" used in the report based on their purported condition*.

SAC ¶ 108 (emphasis added). Plaintiff contends that Defendants' submission is deficient because it does not provide the number of individuals whose offers were based on a CCC report *and* included negative adjustments to comparable vehicles. D.E. 50 at 7. As for damages, Defendants multiply Plaintiff's estimated damages by the number of purported class members but cite to no authority to indicate this is legally sufficient. While this type of calculation may be satisfactory for actions in which all members of a purported class suffered an identical harm, here, the damages suffered by each member of the purported class would likely be individualized since it is based on the valuation of different cars.

Defendants have sought leave to file additional information. D.E. 51. In light of the Court's disposition of the current motion, it denies Defendant's request as moot. However, should Plaintiff file an additional amended complaint, the Court may revisit the issue of its subject-matter jurisdiction pursuant to CAFA.

## IV. CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are **GRANTED**. The dismissal is without prejudice and Plaintiff will have *one* additional opportunity to plead its claims. The Court is reluctant to grant Plaintiff an additional opportunity because the Court took pains to detail the shortcomings of the FAC in the Prior Opinion. Plaintiff shall have thirty (30) days to

file a third amended complaint that cures the deficiencies notes herein.  If Plaintiff does not, then this case will be closed.  An appropriate Order accompanies this Opinion.


Dated: August 26, 2021

John Michael Vazquez, U.S.D.J.